[Cite as *In re N.B.*, 2026-Ohio-2612.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| IN RE N.B. | : | |
| | | No. 115748 |
| Minor Child | : | |
| | | |
| [Appeal by J.F., Mother] | : | |

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** July 9, 2026

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. AD21906920

### *Appearances:*

Wargo Law, LLC, and Leslie Wargo, *for appellant*.

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, Michelle Myers, and Joseph C. Young, Assistant Prosecuting Attorneys, *for appellee* Cuyahoga County Division of Children and Family Services.

SEAN C. GALLAGHER, P.J.:

{¶ 1} Appellant, J.F. ("mother"), appeals the judgment of the Cuyahoga County Court of Common Pleas, Juvenile Division ("juvenile court"), that awarded permanent custody of her minor child N.B. to the Cuyahoga County Division of

Children and Family Services ("CCDCFS" or "the agency") and terminated her parental rights. After careful review, we affirm the juvenile court's decision.

{¶ 2} On August 12, 2021, CCDCFS filed a complaint alleging that N.B. was abused and neglected and seeking temporary custody to the agency. In September 2021, N.B. was committed to the predispositional temporary custody of CCDCFS, and in November 2021, N.B. was adjudicated to be abused and neglected and was committed to the temporary custody of the agency. In August 2022, temporary custody to CCDCFS was terminated, and N.B. was placed in mother's legal custody under protective supervision of the agency. Following a six-month extension of protective supervision, N.B. again was committed to the emergency predispositional custody of CCDCFS on November 28, 2023, after an incident that occurred on November 23, 2023, when N.B. was found wandering down the street from mother's home alone, without socks, shoes, or a coat, and police intervention was required. N.B. was again committed to the temporary custody of the agency on February 12, 2024. On October 4, 2024, CCDCFS filed a motion to modify temporary custody to permanent custody. After hearing testimony and accepting evidence in the matter, the magistrate issued a decision on September 12, 2025, that recommended N.B. be placed in the permanent custody of CCDCFS.

{¶ 3} Mother filed an objection to the magistrate's decision, which was opposed by CCDCFS. No transcript was filed with the juvenile court. On September 29, 2025, the juvenile court issued a judgment entry that granted CCDCFS's motion, awarded permanent custody to the agency, and terminated all parental rights. The

juvenile court also issued a journal entry that overruled mother's objection to the magistrate's decision and approved and adopted the magistrate's decision.[1] Mother's appeal is now before us for review.

{¶ 4} Under her sole assignment of error on appeal, mother claims that the juvenile court erred in overruling her objection to the magistrate's decision and that the juvenile court's judgment is not based on sufficient clear and convincing evidence, is against the manifest weight of the evidence, and is not in the child's best interest. Ordinarily, when reviewing a juvenile court's award of permanent custody and termination of parental rights, "the proper appellate standards of review to apply . . . are the sufficiency-of-the-evidence and/or manifest-weight-of-the-evidence standards, as appropriate depending on the nature of the arguments that are presented by the parties." *In re Z.C.*, 2023-Ohio-4703, ¶ 18.

{¶ 5} As an initial matter, we recognize that both mother and CCDCFS extensively refer to testimony that was presented at the permanent-custody hearing in their appellate briefing. However, during oral argument, counsel for CCDCFS raised the issue of mother's failure to file a transcript in the juvenile court. We caution counsel for CCDCFS about failing to assert the issue in their appellate brief. Nonetheless, our own review of the record shows that mother objected to the magistrate's decision pursuant to Juv.R. 40(D)(3)(b), but she did not file a transcript of the hearing or an affidavit of the evidence with the juvenile court in accordance

---

[1] Because this entry was entered after mother's notice of appeal was filed, a limited remand was issued by this court solely for the trial court to reenter its ruling.

with Juv.R. 40(D)(3)(b)(iii). Although mother subsequently filed the transcript for the appellate record, as this court has previously indicated, "this court cannot consider a transcript that the trial court had no opportunity to review." *In re A.G.*, 2025-Ohio-4371, ¶ 10 (8th Dist.), citing *In re R.O.*, 2025-Ohio-374, ¶ 23 (8th Dist.). Furthermore, pursuant to Juv.R. 40(D)(3)(b)(iii) and (iv), mother has waived her right to challenge the juvenile court's adoption of the magistrate's factual findings on appeal, beyond arguing plain error. *See In re S.M.*, 2025-Ohio-5144, ¶ 15 (8th Dist.); *In re G.H.*, 2024-Ohio-4943, ¶ 21 (8th Dist.).[2] We limit our review accordingly.

{¶ 6} Although it is well established that the right to parent one's child is a fundamental right, the government has broad authority to intervene to protect a child's health or safety. *In re C.F.*, 2007-Ohio-1104, ¶ 28, citing *Troxel v. Granville*, 530 U.S. 57, 66 (2000); R.C. 2151.01. Ultimately, the natural rights of a parent are always subject to the ultimate welfare of the child, which is the controlling principle to be observed. *In re B.C.*, 2014-Ohio-4558, ¶ 20, citing *In re Cunningham*, 59 Ohio St.2d 100, 106 (1979). To that end, "the best interests of the child are paramount in any custody case" and courts "are to liberally interpret the statutes" under R.C. Ch.

---

[2] We reiterate herein that juvenile courts should be mindful of the delays created when magistrate's conduct hearings in permanent-custody cases and that "if the trial judge would conduct the evidentiary hearing . . ., this process would not only remove the additional hurdle of objecting to a magistrate's decision and preserve a party's ability for full appellate review, but it would more importantly remove the delays — delays that only hinder the goals of stability and permanency for these children." *In re S.M.* at ¶ 47 (Keough, J., concurring).

2151 "to provide for the care and protection of the child[.]" *In re A.B.*, 2006-Ohio-4359, ¶ 32, citing R.C. 2151.01(A).

{¶ 7} "Under R.C. 2151.414(B)(1), a juvenile court may grant permanent custody of a child to the agency that moved for permanent custody if the court determines, 'by clear and convincing evidence, that it is in the best interest of the child' to do so and that one of five factors enumerated in R.C. 2151.414(B)(1)(a) through (e) applies." *In re Z.C.,* 2023-Ohio-4703, ¶ 7, quoting R.C. 2151.414(B)(1).

{¶ 8} In this case, the juvenile court found by clear and convincing evidence that the factor under R.C. 2151.414(B)(1)(a) applies and that "the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent." The juvenile court found that N.B.'s continued residence in or return to the home of either parent would be contrary to the child's best interest and that although reasonable efforts were made by the agency and relevant services were provided, mother had not fully complied with or sufficiently benefitted from case-plan services. As found by the juvenile court in this case:

> Mother's case plan services included domestic violence, parenting, mental health, substance abuse, and housing. Mother completed a domestic violence course in 2021. But concerns continued throughout the case. In 2023 and October 2024, Father threatened to kill mother and mother had little urgency to protect herself. Mother was offered other services but only recently re-engaged with domestic violence services in August 2025. Regarding parenting, Mother was referred to the Hough Collaborative and Ohio Guidestone, and Mother completed both courses, but Mother obtained limited benefit. The child needs one on one attention, and mother has no urgency as to the need to be attentive to the child. Child consistently runs off from Mother and she has no urgency to keep up with the child. Mother was referred to Signature Health for mental-health services. Mother did engage with

individual and group therapy and completed anger management. Mother's behaviors have only changed minimally. Mother still has explosive behaviors. Mother was referred to Signature Health for substance abuse. Mother has no sobriety to date. Since September 2024, Mother has had only one negative drug screen. The child is in need of a drug-free caregiver. Mother currently has appropriate housing and works consistently to meet the basic needs of the child.

{¶ 9} The juvenile court specifically determined that factors under R.C. 2151.414(E)(1), (2), and (3) applied in relation to mother's failure to remedy the conditions that caused N.B.'s removal, her chronic chemical dependency and chronic mental illness, and her neglect of the child between the date of the original complaint filing and the date of the filing of the motion for permanent custody.

{¶ 10} In determining the best interest of the child, the juvenile court considered all relevant best-interest factors, including the factors listed under R.C. 2151.414(D)(1)(a)-(e), which are specifically set forth in the juvenile court's decision. "There is not one element that is given greater weight than the others pursuant to the statute." *In re Schaefer*, 2006-Ohio-5513, ¶ 56. The juvenile court further recognized the child's guardian ad litem recommended that the child be committed to the permanent custody of CCDCFS. Additionally, the juvenile court determined that all of the factors under R.C. 2151.414(D)(2) applied, in which case the statute mandates that "permanent custody is in the best interest of the child, and the court shall commit the child to the permanent custody of [the agency.]" Ultimately, the juvenile court found by clear and convincing evidence that "it is in the best interest of the child to be placed in the Permanent Custody of CCDCFS."

{¶ 11} Mother maintains that she was consistently engaged in and substantially completed her case-plan services, that a one-time event in which N.B. was found wandering from mother's home does not warrant the decision to grant permanent custody in this matter, that mother consistently visited with N.B., that there was no evidence that her use of marijuana affected her ability to parent, and that she has a stable home and can provide for N.B.'s basic needs. Mother also challenges CCDCFS's claim of mother's alleged lack of benefit from the services. She argues that N.B. is a young child with special needs, that N.B. was previously returned to mother with protective supervision, and that the agency did not have N.B. tested for autism in order for mother to obtain wraparound services. She raises other challenges in this case. However, mother has waived the right to assign error to the juvenile court's adoption of the magistrate's factual findings, and we otherwise are not persuaded by any of her arguments.

{¶ 12} There is no dispute that the agency first became involved with N.B. in 2021, and mother's other children had been in the agency's custody in the past. Although mother engaged in case-plan services and was reunified with N.B. with protective supervision to CCDCFS, N.B. was again placed in the agency's temporary custody following the incident where N.B. was found wandering alone outside mother's home. The magistrate's factual findings, which the juvenile court properly adopted, reflect that this was not the agency's only concern in the case, that mother obtained limited benefit from case-plan services, that mother had no sense of urgency with the child, that she still has explosive behaviors, that she has no sobriety

date, and that the child is in need of a drug-free caregiver. The guardian ad litem for the child recommended a grant of permanent custody to the agency. Mother has not argued, let alone demonstrated, plain error with regard to the juvenile court's adoption of the magistrate's factual findings in this case. Furthermore, the juvenile court's decision shows that it considered all relevant best interest factors and made the proper statutory determinations.

{¶ 13} Upon our review, we find no plain error in the juvenile court's decision. We also conclude that the juvenile court's decision to grant permanent custody of N.B. to CCDCFS was supported by clear and convincing evidence and is not against the manifest weight of the evidence. Mother's assignment of error is overruled.

{¶ 14} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, PRESIDING JUDGE

KATHLEEN ANN KEOUGH, J. and
EILEEN A. GALLAGHER, J., CONCUR